# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JACQUELYN M. COOPER,**

    **Plaintiff,**

**v.**                                                     Case No. 8:09-cv-787-T-30TBM

**GULFCOAST JEWISH FAMILY
SERVICES, INC.,**

    **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Partial Summary Judgment (Dkt. 17), Defendant's Motion for Summary Judgment (Dkt. 21), Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. 27), and Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. 28). The Court, having reviewed the motions, responses, record evidence, and being otherwise advised in the premises, concludes that the parties' motions should be denied.

## INTRODUCTION

Plaintiff Jacquelyn Cooper ("Plaintiff" or "Cooper") initiated this action by filing a one-count complaint against Defendant Gulfcoast Jewish Family Services, Inc. ("Defendant" or "Gulfcoast"), in which she alleges that Defendant violated her rights under the Family and Medical Leave Act ("FMLA") by interfering with her FMLA rights and retaliating against

her for exercising her FMLA rights. Both parties now move for summary judgment on Plaintiff's claims. Plaintiff moves for summary judgment on her interference claim, arguing that the facts are undisputed that Defendant unlawfully interfered with her right to FMLA leave when it terminated her while she was already on medical leave covered by the FMLA. Defendant moves for summary judgment on Plaintiff's interference and retaliation claims, contending that Plaintiff's claims must fail because she was not on FMLA leave at the time of her termination and her termination was unrelated to her exercise of FMLA rights.

The Court holds that the record reflects a genuine issue of material fact regarding whether Plaintiff asserted her right to take FMLA leave prior to her termination. Specifically, based on the record, a genuine issue of fact exists as to whether Defendant was put on notice that Plaintiff would need additional time off that may be covered by the FMLA. There are also material disputed facts on the issue of whether Plaintiff's termination was unrelated to her exercise of FMLA rights and whether Defendant's legitimate nondiscriminatory reason for Plaintiff's termination was pretext. Accordingly, based on this record, both parties' motions for summary judgment should be denied.

## FACTUAL BACKGROUND

In 2002, Plaintiff worked for Defendant as a Mental Health Therapist. Plaintiff held this position for approximately four years until Kim Tennant ("Tennant"), Defendant's Clinical Administrator, promoted Plaintiff in 2006 to Director of Elder Behavioral Health. According to Plaintiff, in August 2008, she began experiencing severe anxiety. On August 14, 2008 at 9:30 a.m., she sent an e-mail to Darlene Varney ("Varney"), Defendant's Human

Resources Administrator, and Millie Wagner ("Wagner"), Defendant's Human Resources Director, requesting a meeting with HR regarding concerns she was having with her supervisor, Tennant (Dkt. 18-1). The e-mail contained an attached letter that described Plaintiff's issues with Tennant and stated that Plaintiff was experiencing "extreme anxiety." Id. The letter also stated that Plaintiff was "unable to return to work today." Id.

On August 15, 2008, at 9:15 a.m., Plaintiff sent an e-mail to Varney, with a copy to Wagner and Tennant, stating "[y]esterday, I was seen by a medical professional and it was determined that I need to take some time off. I will keep you informed as I know more." (Dkt. 18-2). Wagner responded via e-mail at 9:31 a.m., noting that, according to Defendant's policy as set forth in the employee handbook, it was required that the "employee speak directly to their supervisor or the supervisor's back-up if the supervisor is not in the office that day. E-mails are not considered proper notification." Id. Wagner also stated that "if your absence from work is related to medical issues, you may be eligible for FMLA. You will need to contact me directly via telephone to discuss these options." Id.

That same day at 10:10 a.m., Plaintiff responded to Wagner, with a copy to Tennant and Varney, that she attempted to call Tennant and her back-up, but that they did not answer and she left a message on both of their voice mails. (Dkt. 18-3). Plaintiff also stated that "[d]ue to medication communication may be at a minimum." Id. Wagner then responded at 10:15 a.m. that she tried to reach Plaintiff on her home phone and reached her voice mail and requested Plaintiff to please call her "a.s.a.p." Id. It is unclear in the record whether Plaintiff called Wagner that day. During Plaintiff's deposition, she reviewed the log of

outgoing and ingoing calls on her cell phone and testified that calls were made on August 15 to numbers belonging to Defendant, however, Plaintiff did not state whether Wagner was specifically called. According to Defendant, Plaintiff did not answer any phone calls made to her company cellular phone or home phone that day. Plaintiff did leave a phone message for Tennant on that day and Tennant subsequently told Plaintiff via an e-mail to keep in contact with HR regarding her leave. Tennant testified during her deposition that Plaintiff's leave became an HR issue.

Also on August 15, 2008, Defendant received a medical excuse form from Plaintiff's physician stating Plaintiff would be out of work until August 25, 2008. The medical excuse form stated "Jacqueline Cooper had an office visit today. It is medically recommended that he/she remain out of work/school until 8/25/08." (Dkt. 18-4). On August 19, 2008, at Wagner's request, Valerie Welch ("Welch"), a Human Resources Specialist for Defendant, mailed to Plaintiff a Gulf Coast Request for Leave of Absence Form to be completed by Plaintiff, as well as a medical certification form to be completed by Plaintiff's physician, should Plaintiff wish to request FMLA leave. (Dkt. 18-5). The letter stated that the forms had to be returned to Defendant no later than August 29, 2008. The letter also stated, in part, "[f]ailure to return from FMLA Leave on the specified day without approval will be considered a voluntary resignation with loss of benefits." Id. The letter was sent certified mail, return receipt requested, and Welch testified during her deposition that Plaintiff signed for the letter on August 27, 2008.

It is undisputed in the record that Defendant considered Plaintiff's leave from August 14, 2008 through and including August 24, 2008 to be FMLA leave. During Plaintiff's leave, Defendant claims that various people attempted to call Plaintiff and that Plaintiff did not return their calls. According to Plaintiff's deposition, she did make some calls to numbers belonging to Defendant, however, her testimony was unclear as to who she was specifically calling. Plaintiff did state that Wagner called her a few times and she returned her calls. Plaintiff also stated that HR directed her to contact her supervisor, Tennant, and Plaintiff started to call and send e-mails to Tennant. There is no record evidence suggesting that Tennant informed HR of Plaintiff's alleged communications. Also, Tennant testified during her deposition that, other than Plaintiff's August 15, 2008 voice mail, Tennant did not receive any other messages from Plaintiff related to her medical leave.

On August 25, 2008, Plaintiff did not return to work. According to Plaintiff, she contacted her doctor on August 25 and requested a note providing her with another week off from work due to her continued anxiety. According to Defendant, Wagner called Plaintiff on August 25 and August 26 and left voice mails asking Plaintiff to call her back and inform her of her intentions of returning to work because no one at Defendant had heard from Plaintiff. According to Wagner, Plaintiff was not complying with company policy, which required Plaintiff to speak directly to a person about her absence from work.

In her deposition, Plaintiff acknowledged receiving a call from Wagner on August 26, 2008, regarding the expiration of her medical leave. On August 27, 2008, in response to Wagner's phone message, Plaintiff sent an e-mail to Wagner, with a copy to Varney and

Tennant at 7:52 a.m., stating that her physician had referred her for further treatment and additional information would be forthcoming. (Dkt. 18-6). That same day at 9:44 a.m., Varney responded to Plaintiff via e-mail, reminding Plaintiff that her e-mails were not acceptable for communication and that Plaintiff was to contact Tennant directly. Varney also stated that if Plaintiff had any questions concerning FMLA, she should contact Wagner. (Dkt. 18-7). Plaintiff then responded via e-mail at 11:10 a.m.: "In compliance with company policy, I have tried to follow as directed. Please see [Tennant's] attached email instructing to [sic] contact HR." (Dkt. 18-8). Varney did not respond to Plaintiff's e-mail and did not request further information from Plaintiff regarding her physician's referral for Plaintiff to receive further treatment.

According to Defendant, from August 27 to August 29, Plaintiff remained absent from work and failed to call anyone at Gulf Coast. According to Plaintiff, she called Tennant on August 29, 2008, and left a message with Tennant regarding her status, specifically, that she could not get a doctor's appointment until September 2, 2008. According to Plaintiff, she was following company policy, because Varney and Wagner told her to call Tennant directly. On August 29, 2008, Wagner sent an e-mail to Varney and Tennant stating:

> Just wanted to let you know that I left another voice mail message for Jackie today to contact me regarding her position. As you know, we have not received any supporting documentation from her or her physician indicating why she has not returned to work on 8/25/08. I have left numerous voice mail messages for her, however, she has never returned any of my calls.
>
> Jackie was due to have her FMLA paperwork returned by 8/29/08 if she in fact wanted to apply for FMLA. To date, we have not received her paperwork or any updates from her physician.

(Dkt. 18-9).

On September 1, 2008, Plaintiff sent a fax to Wagner and Tennant, attaching a letter from her physician dated August 29, 2008, that stated that he had referred Plaintiff to a mental health professional. Also on September 1, 2008, at 10:05 p.m., Plaintiff e-mailed Wagner, with a copy to Tennant and Varney, stating:

> The following information is an update regarding my medical leave:
>
> 1. Letter from my primary care physician dated August 29, 2008 was faxed to you on September 1, 2008.
> 2. Completed FMLA forms will be forwarded to you this week.

(Dkt. 18-11). On September 2, 2008 at 12:15 p.m., Varney sent an e-mail to Plaintiff stating in pertinent part:

> Jackie - As you will remember Millie Wagner left you a voice mail message on Friday, August 29, 2008 to contact her no later than 5:00 PM to discuss your intention's [sic] with regard to your position. Since you have repeatedly failed to return our calls this email is to inform you that your position with Gulf Coast is terminated effective 8/29/2008.

(Dkt. 18-12). According to Defendant's policy as set forth in its employee handbook "[t]wenty-four hours absence without supervisor notification will be grounds for immediate termination." (Dkt. 18-15).

On April 27, 2009, Plaintiff filed this action against Defendant under the FMLA, arguing that Defendant willfully interfered with Plaintiff's FMLA rights by denying her FMLA coverage and discharging her from employment after she requested time off due to her health condition. Plaintiff also contended that Defendant willfully retaliated against her

for exercising her FMLA rights by discharging her from employment and failing to comply with its obligations under the FMLA and its implementing regulations.

## **LEGAL DISCUSSION**

**I.	Standard of Review - Motions for Summary Judgment**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Applicable Law under the FMLA

The FMLA entitles an eligible employee to take twelve workweeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(D). In addition to taking twelve weeks of leave at once, an employee may take intermittent leave in separate blocks of time because of a single qualifying medical reason. 29 C.F.R. § 825.202(a). To preserve these rights to take leave, the FMLA creates two types of claims: interference claims, in which an employee alleges that his employer denied him a benefit guaranteed under the Act, 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. 29 U.S.C. § 2615(a)(2).

Retaliation and interference claims have different standards of proof. To state an interference claim, a plaintiff must demonstrate that he was entitled to a benefit under the FMLA and the employer denied him the benefit. *Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206-07 (11th Cir. 2006). The employer's motives are irrelevant. *Id.* at 1208. In contrast, to succeed on a retaliation claim a plaintiff must show that the employer acted with discriminatory or retaliatory animus when the plaintiff was discharged. *Id.* at 1207.

### A. Plaintiff's Interference Claim

**1. Plaintiff's Motion for Summary Judgment on her interference claim should be denied, because there is a genuine issue of material fact regarding whether Plaintiff was on leave at the time of her termination and/or whether Plaintiff requested an extension of her leave prior to her termination.**

Plaintiff argues for summary judgment on her interference claim because she contends that Defendant unlawfully interfered with her right to FMLA leave when it terminated her while she was already on medical leave covered by the FMLA. Plaintiff also points out that Defendant's August 19, 2008 letter did not allow her at least fifteen (15) calendar days to comply with a request for certification. Defendant argues that Plaintiff cannot demonstrate she was legally entitled to an FMLA benefit that she was denied.

An employee's FMLA notice is valid if it is "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated time and duration of the leave." 29 C.F.R. § 825.302(c). The employee is not required to "expressly assert rights

under the FMLA or even mention the FMLA." *Id.* Essentially, there are two components of a valid notice: (1) the notice must inform the employer that the employee desires time off from work; and (2) the notice must assert that the requested absence is due to a FMLA qualifying condition. After the employee makes the appropriate statement, the responsibility then falls on the employer to inquire further about whether the employee is seeking FMLA leave. 29 C.F.R. § 825.302(c). An employee can adequately convey to the employer sufficient information to put the employer on notice, either at the time of the request or before, that an absence is potentially FMLA qualifying. *Cruz v. Publix Super Mkts., Inc.,* 428 F.3d 1379,1384 (11th Cir. 2005).

Whether the employee believes his request for leave is FMLA qualifying is not relevant given that the statute places the burden on the employer to determine whether an employee's request for leave falls within the FMLA. 29 C.F.R. § 825.302(c). The statute "does not contemplate allowing employers to benefit from their employee's lack of knowledge about their FMLA rights." *Beveridge v. HD Supply Waterworks, L.T.D.*, 2009 WL 4755370, *9 -10 (M.D. Ga. Dec. 7, 2009) (*citing Nasbaum v. CB Richard Ellis, Inc.,* 171 F. Supp. 2d 377, 381 (D.N.J. 2001)).

Upon receiving an employee's notice or request for FMLA leave, employers may require that employees furnish medical certification to verify eligibility for leave. 29 U.S.C. § 2613(a). Employers must provide notice of such a requirement, and of the anticipated consequences for failing to comply, every time an employee requests FMLA leave. 29

C.F.R. § 825.305(d). When the leave is unforeseeable, employers must allow employees at least fifteen (15) calendar days to comply with a request for certification. 29 C.F.R. § 825.305(b). Specifically, [t]he employee must provide the requested certification to the employer within 15 calendar days *after the employer's request*, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id.* (emphasis added).

Here, Plaintiff is correct that Defendant failed to provide her with the fifteen calendar days to provide the requested certification. The record is undisputed that Defendant improperly calculated the fifteen days from the time of Plaintiff's absence on August 14, 2008, when the law is clear that the time must be calculated from the time of the employer's request, which was not made until August 19, 2008. *Cooper v. Fulton County, Georgia*, 458 F.3d 1282 (11th Cir. 2006). Thus, Plaintiff should have received fifteen days from the August 19, 2008 request to provide the certification.

However, the record is undisputed that Plaintiff received ten days of FMLA leave, despite her failure to comply with Defendant's August 29, 2008 certification deadline. And whether Defendant unlawfully interfered with, restrained, or denied Plaintiff's exercise of or attempt to exercise a right under the FMLA turns on whether Plaintiff was still entitled to FMLA leave after August 24, 2008, or requested FMLA leave after August 24, 2008. Although Defendant concedes that Plaintiff was on FMLA leave during her absence from

August 14 - August 24, it is unclear in the record whether Plaintiff was on FMLA leave or notified Defendant that she was seeking additional FMLA leave after August 24, 2008.

The Court concludes that Plaintiff's e-mail on August 27, 2008, creates a disputed fact as to whether Plaintiff provided Defendant with adequate notice that she needed an extension of her FMLA leave. Similar to the facts in *Beveridge*, given the past conduct of Plaintiff's previous leave from August 14 - August 24, which Defendant concedes qualified as FMLA leave, the August 27 e-mail from Plaintiff stating that her physician had referred her for further treatment and additional information would be forthcoming, creates a material disputed fact as to whether Defendant was on notice that Plaintiff was requesting additional FMLA leave. In *Beveridge*, the court held that "a genuine issue of fact exists as to whether [the employer] was put on notice that [Plaintiff] would need time off from work when [Plaintiff] said on the morning of June 18th that he would call and make a doctor's appointment as soon as the doctor's office opened." 2009 WL 4755370 at *10.

Accordingly, Plaintiff's motion for summary judgment on her interference claim must be denied because a reasonable jury could find that Plaintiff did not provide the requisite FMLA notice to Defendant prior to her termination. If the jury finds that Plaintiff did provide the requisite notice, Defendant's decision to terminate her would constitute an interference with Plaintiff's right to FMLA leave unless the jury determines that Plaintiff would have been terminated despite her FMLA leave request, which is the next issue before this Court.

**2. Defendant's Motion for Summary Judgment on Plaintiff's interference claim should be denied, because there is a genuine issue of material fact regarding whether Plaintiff would have been terminated despite her FMLA leave request.**

Defendant moves for summary judgment on Plaintiff's interference claim arguing that its decision to terminate Plaintiff was unrelated to any request for FMLA leave. Specifically, Defendant argues that Plaintiff was terminated because she failed to follow Defendant's policies and procedures requiring that she communicate with her supervisor in the event she would be absent from work.

In *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, (11th Cir. 2010), the Eleventh Circuit recently held that:

> This court has not previously decided whether the FMLA right to commence leave is absolute. Now, being presented directly with the issue, the court is persuaded by the reasoning of other circuits which have addressed this issue that *the right to commence FMLA leave is not absolute, and that an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave.*

(emphasis added). In *Krutzig*, the Eleventh Circuit affirmed the district court's granting of summary judgment in favor of the employer because the record was undisputed that the decisionmaker was unaware at the time of the decision to terminate the employee of the employee's request to commence FMLA leave. *Id.*

Here, however, the record presents an issue of material fact as to whether Plaintiff would have been dismissed regardless of any request for FMLA leave. Indeed, although

there is evidence in the record that Defendant considered Plaintiff's absence from work job abandonment because it believed Plaintiff was not following Defendant's policies and procedures regarding her absence from work, Varney, Wagner, Tennant, and Welch stated during their depositions that Plaintiff's failure to return the FMLA paperwork played a role in her termination. In fact, Varney, who was identified as the decisionmaker regarding Plaintiff's termination, testified during her deposition that on August 29, 2008, she had decided that "if [Plaintiff] did not return her [FMLA] paperwork that, yes, she would be terminated." (Varney's deposition at 20:20-22).

Accordingly, Defendant's motion for summary judgment on Plaintiff's interference claim must be denied because a reasonable jury could find that Plaintiff's termination was related to her request for FMLA leave.

### B. Plaintiff's Retaliation Claim

Only Defendant has moved for summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff cannot establish a causal connection between her termination and her exercise of FMLA rights because Defendant had a legitimate reason for Plaintiff's termination.

In the absence of direct evidence of discrimination by the employer, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applied in evaluating FMLA retaliation claims. To state a claim of retaliation an employee must first establish a prima facie case of retaliatory

discharge. An employee must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. *Strickland,* 239 F.3d at 1207. Once an employee establishes a prima facie case, the burden of production shifts to the employer "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1296, 1297 (11th Cir. 2006).

If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* at 1298 (*quoting Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000)). To show pretext, the employee may rely on evidence that he already produced to establish his prima facie case. *Martin v. Brevard County Pub. Schools,* 543 F.3d 1261, 1268 (11th Cir. 2008).

Defendant concedes that Plaintiff engaged in protected activity by taking FMLA leave and acknowledges that Plaintiff's termination was an adverse action. But Defendant argues that it took the adverse action for legitimate reasons. Specifically, Defendant argues that, as set forth herein, Plaintiff was terminated because she failed to follow Defendant's policies requiring that she communicate with her supervisor in the event she would be absent from work and failed to return Defendant's phone messages.

To rebut Defendant's alleged legitimate reason, Plaintiff points to the inconsistencies in the record regarding the timing of Plaintiff's termination. Specifically, although Varney testified during her deposition that the decision to terminate Plaintiff was made on August 29, 2008, prior to Plaintiff's September 1, 2008 e-mail providing additional medical information regarding her FMLA leave to Defendant, Defendant's interrogatory answer states that the decision to terminate Plaintiff was made on September 2, 2008, after Plaintiff faxed the August 29, 2008 physician's note on September 1, 2008 and notified Defendant that completed FMLA forms would be forwarded that week. (Dkt. 19). Notably, temporal proximity between an employee's termination and request for FMLA leave is also evidence of pretext. *Beveridge*, 2009 WL 4755370 at *13 (*citing Dougherty v. Mikart, Inc.*, 205 Fed. Appx. 826, 828 (11th Cir. 2006)).

Additionally, there is evidence in the record suggesting that Plaintiff did contact Defendant during her absence from work, via her August 27, 2008 e-mail and phone messages that Plaintiff testified she left on Tennant's voice mail. Moreover, the record reflects that Defendant provided Plaintiff with inconsistent answers regarding its policy as to who she was to contact regarding her leave. Although Varney and Wagner told Plaintiff to contact Tenant directly regarding her absences, Tenant told Plaintiff to contact Varney and Wagner. There is also evidence of pretext regarding Defendant's failure to immediately terminate Plaintiff after she failed to return to work on August 25, 2008, given Defendant's policy that "[t]wenty-four hours absence without supervisor notification will be grounds for immediate termination." (Dkt. 18-15).

All of these inconsistencies are sufficient to establish a disputed fact on the issue of pretext at this stage and a jury could find that the sequence of events suggests that Plaintiff was terminated because she requested additional FMLA leave. Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claim must be denied.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 17) is hereby DENIED.

2. Defendant's Motion for Summary Judgment (Dkt. 21) is hereby DENIED.

**DONE** and **ORDERED** in Tampa, Florida on May 27, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\09-cv-787.msjs.frm